IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARQUIS OLDS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00345 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HAROLD CLARKE, *et al.*, | ) |     United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Marquis Olds, a Virginia inmate proceeding *pro se*, filed a civil action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Harold Clarke, A. David Robinson, Henry Ponton, John F. Walrath, B. Kanode, A. Mullins, Mark Engleke, J. Morrison, Virginia Department of Corrections, and River North Correctional Center, violated his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq*. Defendants filed a motion for summary judgment, Olds responded, and this matter is ripe for disposition. For the reasons stated herein, the court grants defendants' motion for summary judgment.

I. BACKGROUND

**A. Olds' Complaint**

Olds alleges in an unverified complaint that he is a Rastafarian inmate housed within the Virginia Department of Corrections (VDOC). At the time he filed this action, Olds was housed at River North Correctional Center (River North). Since filing the action, Olds has been transferred to Sussex I State Prison. Olds argues that his religious practice is "substantially burden[ed]" by the diet and hair policies at River North.

Olds states that it is a "central tene[]t" of his faith "to eat clean foods such as fruits and vegetables [that are] free [from] exposure to foods forbidden to [be eaten] by the Rastafarian

faith[,] such as pork and unclean meats." Olds alleges that the River North kitchen "prepares and serves pork and unclean meats to the general population almost daily, while a 'religious diet' titled '[C]ommon [F]are' is offered." Olds claims that the regular and Common Fare "diets, trays, etc." are "exposed to each other and cross[-]contaminated[,] resulting in even the 'religious [C]ommon [F]are' diet [] being unacceptable" to his religious dietary needs. He does not explain how he knows that the "diets, trays, etc." are cross-contaminated. Olds argues that being given "no choice but to eat said foods" places his "soul in peril."

Olds also states that it is a "central tene[]t of the Rastafarian faith to grow . . . facial hair and . . . dreadlocks." Olds alleges that the VDOC and River North require him to "cut his hair and keep his facial hair trimmed very close" at one-quarter of an inch. Olds acknowledges that the VDOC will allow Rastafarian inmates to grow their hair and beards, but states that in order to do so, he must be housed in a special housing unit at a higher security level facility, where he "would be denied rights and privileges he is entitled to [for] being a good inmate." Olds does not explain which rights and privileges he would allegedly be denied.

**B. Defendants' Motion for Summary Judgment**

In support of their motion for summary judgment, defendants submit affidavits by defendants Jessica Morrison, the Food Service Director at River North, and John Walrath, the Warden at River North. Defendants argue that Olds' exercise of religion has not been substantially burdened by the VDOC's Common Fare diet or the grooming policy. In support of their motion for summary judgment, defendants assert the following.

**1. Diet**

The Common Fare diet is intended to accommodate offenders whose religious dietary needs cannot be met by the Master Menu. (Morrison Aff. ¶ 4, Dkt. No. 15, Attach. 1.) All food purchased for Common Fare, except fresh fruits and vegetables, are certified by a recognized

Orthodox Standard, such as "U", "K", or "CRC." (*Id.* at ¶ 5.) No pork or pork derivatives are used. (*Id.*) Fresh fruits and raw fresh vegetables are delivered weekly to River North. (*Id.*)

All food cooked for the Common Fare diet is cooked in designated Common Fare equipment. (*Id.*) Common Fare meals are prepared in a separate area and are not-cross contaminated with the regular food trays. (*Id.* at ¶ 6.) Common Fare foods are served on separate trays, with separate utensils and separate cups from regular menu food items. (*Id.*) The machine used to clean the Common Fare serving items is broken down, cleaned, and thoroughly sanitized before the Common Fare items are placed inside of it to be cleaned. (*Id.*) There is no cross-contamination in any way of Common Fare food items and regular food items. (*Id.*)

During offender lockdowns, when offenders are served their meals inside of their housing units, the Common Fare meals are placed on Common Fare carts, completely separate from regular food tray carts. (*Id.* at ¶ 7.) In order to eliminate the possibility of cross contamination, Common Fare carts do not hold any regular menu food trays. (*Id.*)

**2. Hair**

VDOC Operating Procedure ("OP") 864.1, *Offender Grooming and Hygiene*, establishes uniform personal grooming standards for offenders incarcerated in the VDOC in order to facilitate the identification of offenders and promote safety, security, and sanitation. (Walrath Aff. ¶ 4, Dkt. No. 15, Attach. 2.) The OP provides that hairstyles and beards that could conceal contraband, promote identification with gangs, create a health, hygiene, or sanitation hazard, or that could significantly compromise the ability to identify an offender are not allowed. (*Id.* at ¶5.) Styles such as braids, plaits, dreadlocks, cornrows, ponytails, buns, and mohawks are not permitted. (*Id.*) Per the OP, all male offenders' hair must be neatly cut, cut above the shirt collar and around the ears, and cannot be more than one inch in thickness and depth. (*Id.*) Sideburns are not allowed to extend below the middle of the ear and beards must be neatly trimmed and

cannot exceed one-quarter inch in length. (*Id.*) Offenders who violate this OP may be charged with an institutional infraction. (*Id.*)

Rastafarian offenders who come into VDOC facilities and state that they cannot cut their dreadlocks or beards due to their religious beliefs are not forced to come into compliance with OP 864.1. (*Id.* at ¶ 6.) Instead, they are transferred to Wallens Ridge State Prison (Wallens Ridge) and housed in the Violator Housing Unit (VHU). (*Id.*)

The VHU was established in 2013. (*Id.* at ¶ 7.) The objective of the VHU is to manage and encourage compliance by male offenders who are in violation of the grooming standards pursuant to OP 864.1. (*Id.*) Offenders housed in the VHU are not denied any rights and privileges as Olds alleges. (*Id.*) They are offered the same recreation as general population offenders and are also afforded the opportunity to go to school and to obtain certain types of employment. (*Id.*)

For security and health reasons, River North requires all offenders to comply with the grooming standards specified in OP 864.1. (*Id.* at ¶ 9.) Any individual failure to comply could pose a security risk, health hazard, or identification difficulties. (*Id.*) Therefore, offenders who refuse to comply or who chronically violate inmate grooming standards are transferred to Wallens Ridge to be managed as potential risks to institutional order and safety. (*Id.*)

## II. DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, Olds has filed an unverified complaint. "[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment." *See, e.g., Askins v. Belissary*, No. 4:12-CV-1856-RBH, 2014 U.S. Dist. LEXIS 14783, at *18, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), *aff'd*, 564 F. App'x 46 (4th Cir. 2014).

Further, as a general rule, the non-movant must respond to a motion for summary

5

judgment with affidavits, or other verified evidence, rather than relying on an unverified complaint. *Celotex Corp., 477 U.S. at 324; see also Williams*, 952 F.2d at 823. An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, a party cannot ward off summary judgment with an affidavit or verified complaint "based on rumor or conjecture." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *see also Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (summary judgment may be appropriate in cases where the allegations in the verified pleading are merely conclusory). Olds has responded to defendants' motion for summary judgment (*see* Dkt. No. 19), but he has failed to provide any affidavit, even his own, to contradict defendants' version of the facts. The court notes that Olds was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison,* 528 F. 2d 309, 310 (4th Cir. 1975). *See* Dkt. No. 16. Because Olds has submitted no evidence, the court will view defendants' facts in the record as undisputed, but the court may grant the motion only if defendants are entitled to summary judgment.[1] Fed. R. Civ. P. 56(e)(2)-(3).

**B. First Amendment and RLUIPA**

Olds alleges that the defendants violated his rights under the First Amendment and RLUIPA. RLUIPA affords heightened protection to a prisoner's religious exercise, whereas the First Amendment is more deferential to prison official's decisions impacting religious exercise.

RLUIPA prohibits government officials from imposing a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42

---

[1] The court notes that even if Olds had verified his complaint, his allegations are too vague and conclusory to withstand summary judgment. *See Brown v. Flowers*, 196 F. App'x 178, 182 (4th Cir. 2006).

U.S.C. § 2000cc-1(a). In contrast, a correctional policy or practice that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. *Lovelace*, 472 F.3d at 199.

To state a viable claim under the First Amendment or RLUIPA, a plaintiff must first demonstrate that the defendant prison officials' actions or policies place a substantial burden on his free exercise of his sincere religious belief.[2] *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (First Amendment); *Lovelace v. Lee*, 472 F.3d 174, 185 (4th Cir. 2006) (RLUIPA). A "substantial burden" on religious exercise occurs under the First Amendment or RLUIPA when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Lovelace*, 472 F.3d at 187 (internal citations omitted). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. *See, e.g., Krieger v. Brown*, 496 F. App'x. 322, 324 (4th Cir. 2012). The court finds that Olds has not demonstrated a substantial burden on his religious exercise and, therefore, will grant defendants' motion for summary judgment.[3]

**D. Diet**

Olds alleges that his religious beliefs require him to eat "clean foods such as fresh fruits and vegetables [that are] free [from] exposure to foods forbidden to [be eaten] by the Rastafarian faith[,] such as pork and unclean meats." The undisputed evidence before the court shows that

---

[2] Defendants do not dispute that Olds' beliefs are sincerely held or rooted in religion.

[3] Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over any state law claims.

7

all food purchased for Common Fare, except fresh fruits and vegetables, are certified by a recognized Orthodox Standard, such as "U", "K", or "CRC"; no pork or pork derivatives are used; fresh fruits and raw fresh vegetables are delivered weekly to River North; all food cooked for the Common Fare diet is cooked in designated Common Fare equipment and prepared in a separate area; Common Fare foods are served on separate trays, with separate utensils and separate cups from regular menu food items; the machine to clean the Common Fare serving items is broken down, cleaned, and thoroughly sanitized before the Common Fare items are placed inside of it to be cleaned; and there is no cross-contamination in any way of Common Fare food items and regular food items. (Morrison Aff. ¶¶ 4-7.)

Based on this evidence, the court finds that Olds has not demonstrated that the defendants have pressured him to violate his religious beliefs or abandon one of the precepts of his religion, and thus he has not demonstrated a substantial burden on his religious exercise. Accordingly, the court will grant defendants' motion for summary judgment as to this claim.

**E. Hair**

Olds alleges that his religious beliefs require him to grow facial hair and dreadlocks. The undisputed evidence shows that Rastafarian offenders who come into VDOC facilities and state that they cannot cut their dreadlocks or beards due to their religious beliefs are not forced to come into compliance with OP 864.1, but instead, are transferred to Wallens Ridge and housed in the VHU. (Walrath Aff. at ¶ 6.) The objective of the VHU is to manage and encourage compliance by male offenders who are in violation of the VDOC's grooming standards. (*Id.* at ¶ 7.) Offenders housed in the VHU are not denied any rights and privileges; they are offered the same recreation as general population offenders; and they are afforded the opportunity to go to school and to obtain certain types of employment. (*Id.*)

8

Based on this evidence, the court finds that Olds has not demonstrated that the defendants have pressured him to violate his religious beliefs or abandon one of the precepts of his religion, and thus he has not demonstrated a substantial burden on his religious exercise. Accordingly, the court will grant defendants' motion for summary judgment as to this claim.

III. CONCLUSION

For the reasons stated herein, the court grants defendants' motion for summary judgment.[4]

An appropriate order will be entered.

Entered: September 27, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[4] Moreover, the VDOC and River North are not proper defendants to this action. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a *person* acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988) (emphasis added). As neither the VDOC nor River North are a "person" subject to suit under § 1983, Olds cannot maintain this action against the defendant state agency and correctional center. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890 (E.D. Va. 1992).
   Further, the defendants are immune from damages claims for actions taken in their official capacities. *See Will*, 491 U.S. at 71. Finally, to the extent Olds seeks injunctive relief against the defendants who work at River North, his claims are moot because he is no longer housed there. *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer rendered moot his claims for injunctive and declaratory relief).